IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GPNE CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-2049-SLR-SRF |
| ) | |
| FLEETMATICS USA, LLC, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this patent infringement action is plaintiff and counter-defendant GPNE Corp.'s ("GPNE" or "plaintiff") motion to dismiss counterclaim counts V through VIII of defendant Fleetmatics USA, LLC's ("Fleetmatics" or "defendant") answer, affirmative defenses, and counterclaims for failure to state a claim. (D.I. 30) For the following reasons, I recommend that the court deny the motion to dismiss.

### II. BACKGROUND[1]

On August 4, 2009, U.S. Patent No. 7,570,954 ("the '954 patent"), entitled "Communication System Wherein a Clocking Signal From a Controller, a Request From a Node, Acknowledgement of the Request, and Data Transferred from the Node are all Provided on Different Frequencies, Enabling Simultaneous Transmission of these Signals," was issued by the United States Patent and Trademark Office (the "PTO"). (D.I. 28 at ¶ 12) GPNE is the assignee of the '954 patent. (*Id.* at ¶ 14)

---

[1] GPNE originally asserted U.S. Patent No. 8,086,240 ("the '240 patent") in this action in addition to the '954 patent. On November 12, 2014, the parties filed a stipulation dismissing the assertion of the '240 patent with prejudice. (D.I. 47)

Fleetmatics and related brand SageQuest provide fleet management solutions in the form of web-based and mobile application solutions. (D.I. 28 at 11, ¶ 4) Fleetmatics' solutions provide its customers with the ability to monitor the vehicle location, fuel usage, speed, and mileage of a mobile workforce. (*Id.*) To monitor these variables, Fleetmatics installs vehicle tracking units ("VTUs") into its customers' vehicles. (*Id.*)

In September 2012, third-party requester Research In Motion Corp. and Research In Motion Limited ("RIM") filed reexamination requests with the PTO seeking reexamination of three patents in GPNE's portfolio, including the '954 patent. (D.I. 28 at ¶ 51) The PTO granted RIM's reexamination requests on November 27, 2012. (*Id.* at ¶ 52; 11/17/14 Tr. at 24:16-20) All claims of the '954 patent that were subject to reexamination were confirmed without further amendment. (D.I. 32, Ex. A)

GPNE's U.S. Patent No. 7,555,267 ("the '267 patent"), which is not in suit in the present litigation, is also the subject of reexamination proceedings. (D.I. 32, Ex. B) On reexamination, the examiner rejected a number of the '267 patent's claims, including claim 30. (*Id.*) GPNE filed a request for reconsideration of the rejected claims. (*Id.*)

In August 2013, GPNE sent six form letters to Fleetmatics' customers in an effort to license its patent portfolio. (D.I. 28 at ¶ 27; 11/17/14 Tr. at 25:1-8, 26:3-14) The letters outlined GPNE's litigation against other companies implementing GPRS technology, urged the customers to consult with their own counsel, and enclosed claim charts, a "Patent License Agreement," and a list of GPNE patents, including the patents-in-suit. (D.I. 28 at ¶¶ 28-39) By way of example, GPNE relied on claim 30 of the '267 patent to demonstrate its relationship to a GPRS-programmed device. (*Id.*, Ex. 3) The letters did not mention that the claims of the '267 patent were the subject of reexamination proceedings challenging their validity. (*Id.* at ¶ 90; 11/17/14

2

Tr. at 25:8-10) In response to the letters, at least one Fleetmatics customer, ProBuild Holdings ("ProBuild"), terminated its contract with Fleetmatics, citing Fleetmatics' violation of the intellectual property rights of others. (D.I. 28 at ¶¶ 49-50)

The '954 and '267 patents are also the subject of a lawsuit brought by GPNE against Apple, Inc. ("Apple") in the Northern District of California. (D.I. 31 at 4) On April 9, 2014, the court in that action denied Apple's motion for summary judgment of non-infringement of claim 13 of the '954 patent. *GPNE Corp. v. Apple, Inc.*, 2014 WL 1390039 (N.D. Cal. Apr. 9, 2014). In the decision, the court determined that, while smartphones and tablets are not referred to as "pagers," devices accessing modern cellular systems for data communication could be viewed as "pagers" and "nodes" as defined by GPNE's patents. *Id.* at *6. The court further determined that claim 30 of the '267 patent was invalid for lack of written description and enablement. *Id.* at *12.

On December 19, 2013, GPNE initiated the instant action, alleging that Fleetmatics infringed the patents-in-suit. (D.I. 1) On May 21, 2014, GPNE filed an amended complaint, asserting claims for direct and indirect infringement of the patents-in-suit. (D.I. 17 at ¶¶ 12-21) Fleetmatics filed its answer and counterclaims on June 9, 2014. (D.I. 18) On July 17, 2014, Fleetmatics filed its first amended answer and counterclaims, including counterclaims for tortious interference with business relations, tortious interference with prospective business opportunities, and statutory and common law unfair competition, based on GPNE's conduct in sending form letters to Fleetmatics' customers alleging infringement and threatening legal action. (D.I. 28)

## III. LEGAL STANDARD

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 555-56; *Iqbal*, 556 U.S. at 663. The court "need not accept as true threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.*

Following the Supreme Court's decision in *Iqbal*, district courts have conducted a two-part analysis in determining the sufficiency of the claims. First, the court must separate the factual and legal elements of the claim, accepting the complaint's well-pleaded facts as true and disregarding the legal conclusions. *Iqbal*, 556 U.S. at 663. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 664. Second, the court must determine whether the facts alleged in the complaint state a plausible claim by conducting a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. DISCUSSION

### A. Preemption

In support of its motion to dismiss, GPNE alleges that Fleetmatics' state law counterclaims are preempted by federal law because Fleetmatics cannot show that GPNE's letters were "objectively baseless." (D.I. 31 at 7) According to GPNE, a patent owner may permissibly notify infringers of the consequences of infringement, and such action does not constitute bad faith. (*Id.* at 7-8) In response, Fleetmatics contends that federal law does not preempt its state law tort claims because it has alleged sufficient facts to show that GPNE sent the infringement letters in bad faith. (D.I. 34 at 6)

The law of the Federal Circuit applies in determining whether the patent laws preempt a state-law tort claim. *See, e.g., Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999). The Federal Circuit has held that federal patent law preempts the imposition of state-law liability for a patentholder's communications asserting alleged infringement unless those communications were made in bad faith. *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004) (citing *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999)); *see also Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998), *rev'd on other grounds, Midwest Indus.*, 175 F.3d at 1359. "[B]ad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Zenith*, 182 F.3d at 1355. "In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998).

"Bad faith includes separate objective and subjective components." *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (citing *Mikohn Gaming*, 165 F.3d at 897). "The objective component requires a showing that the infringement allegations are objectively baseless."[2] *800 Adept, Inc. v. Murex Secs., Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008) (internal quotations omitted). Infringement allegations are objectively baseless if "no reasonable litigant could realistically expect to secure favorable relief." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62 (1993). Therefore, the plaintiff seeking to prove bad faith must "prove that the defendant lacked probable cause to institute an unsuccessful civil lawsuit and that the defendant pressed the action for an improper, malicious purpose." *Id.* The subjective component relates to a showing that the patentee demonstrated subjective bad faith in enforcing the patent. *800 Adept, Inc.*, 539 F.3d at 1370. For example, the patentee's statements themselves are relevant to determining bad faith. *Zenith*, 182 F.3d at 1355 (citing *Mikohn*, 165 F.3d at 897).

### 1. Infringement allegations

In support of its motion to dismiss, GPNE alleges that it has an objectively reasonable basis to conclude that Fleetmatics' VTUs constitute pagers because the Northern District of California construed "node" as meaning a "pager with two-way communications capability that transmits wireless data communications on a paging system that operates independently from a telephone network," and Fleetmatics' devices possess two-way communication capability. (D.I. 31 at 8) In response, Fleetmatics contends that its counterclaims identified how the accused

---

[2] The parties agree that, to determine whether Fleetmatics has sufficiently pleaded bad faith, the court must apply a standard of "objective baselessness." (11/17/14 Tr. at 39:4-10); *see also Gurglepot, Inc. v. New Shreve, Crump & Low LLC*, 2014 WL 2744283, at *5 (W.D. Wash. June 17, 2014) ("Demonstrating bad faith requires the plaintiff to allege and prove that the sender's claim of infringement was 'objectively baseless.'").

products do not meet the limitations of the asserted claims pursuant to the Northern District of California's claim construction, because its VTUs do not transmit wireless data communications on a paging system operating independently from a telephone network. (D.I. 34 at 7) Fleetmatics contends that its counterclaims sufficiently plead that GPNE brought its claims without an objectively reasonable basis to conclude that the VTUs are nodes or pagers, or that the VTUs transmit wireless data communications on a paging system operating independently from a telephone network. (*Id.*) According to Fleetmatics, these factual inferences, taken as true, demonstrate a sufficient foundation for Fleetmatics' claim that GPNE asserted its infringement claims in bad faith. (*Id.*)

A patent owner may permissibly notify infringers of the consequences of infringement, and such action does not automatically constitute bad faith. *See Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37-38 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in the courts. Such action, considered by itself, cannot be said to be illegal."). However, Fleetmatics' amended counterclaims sufficiently set forth allegations of bad faith in connection with GPNE's infringement contentions to satisfy the Rule 12(b)(6) standard at this stage of the proceedings. *See Rochester Drug Co-op., Inc. v. Braintree Labs.*, 712 F. Supp. 2d 308, 320 (D. Del. 2010) (concluding that defendant need only allege facts which, if proven, would establish objective baselessness). Specifically, Fleetmatics' counterclaims contain the following allegations of bad faith pertaining to GPNE's infringement allegations:

> 90. The evidence of GPNE's bad faith includes at least the following:
>
> - Asserting claims 13 and 18-19 of the '954 patent and claim 27 of the '240 patent against FleetMatics without an objectively reasonable basis to conclude that FleetMatics' VTUs are nodes or pages [sic] or that

7

> FleetMatics' VTUs transmit wireless data communications on a paging system that operates independently from a telephone network.
>
> . . .

(D.I. 28 at ¶¶ 90, 101) Moreover, Fleetmatics pleads that its products do not infringe the patents-in-suit because its VTUs are not "nodes" that "transmit[] wireless data communications on a paging system that operates independently from a telephone network." (*Id.* at ¶¶ 61, 67) At this stage of the proceedings,[3] Fleetmatics is not required to prove by clear and convincing evidence that its allegations of bad faith are true. *See Kimberly-Clark Worldwide, Inc. v. Cardinal Health 200, LLC*, C.A. No. 11-1228-RGA, 2012 WL 3063974, at *2 (D. Del. July 27, 2012) (concluding that allegations of bad faith were sufficient at the pleadings stage when defendant asserted its noninfringement allegations and contested objective reasonableness of plaintiff's allegations on that basis). Crediting Fleetmatics' allegations as true, and viewing the factual allegations in the light most favorable to the nonmoving party, I recommend that the court deny GPNE's motion to dismiss with respect to its preemption contentions.

## 2. Validity of the GPNE patent claims

GPNE next alleges that Fleetmatics' counterclaims fail to state a claim upon which relief can be granted because patentees may advise third parties of the patentee's patents even if those patents may be subject to reexamination proceedings. (D.I. 31 at 9-10) Moreover, GPNE contends that it wrote its patent information letters long before the Northern District of California determined that claim 30 of the '267 patent was invalid, and GPNE ceased its efforts to enforce

---

[3] Notably, many of the cases cited by GPNE in support of its motion to dismiss do not address the sufficiency of bad faith allegations at the pleadings stage. To the extent that GPNE relies on *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, *Golan v. Pingel Enterprise, Inc.*, or *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH* in support of its position, the court notes that those cases were decided on summary judgment, and the defendant was required to prove its allegations of objective baselessness by clear and convincing evidence.

that claim after it was declared invalid. (*Id.* at 10) In response, Fleetmatics alleges that GPNE knew of the prior art and invalidity positions identified in the California litigation, as well as the PTO's grant of the reexamination requests, and its persistence in sending the patent information letters therefore constituted bad faith. (D.I. 34 at 9-10) According to Fleetmatics, the fact that GPNE subsequently dropped claim 30, and the entire '267 patent, from the litigation further suggests that GPNE asserted its infringement claims in bad faith. (*Id.* at 11)

Fleetmatics sufficiently pleaded allegations of bad faith in connection with the validity of the '954 patent. Specifically, the disputed counterclaims allege that GPNE:

- Sen[t] customers such as ProBuild Holdings claim charts comparing claim 30 of [the '267 patent] with knowledge: (i) of the prior art and invalidity positions identified by the defendants in *GPNE Corp. v. Apple, Inc.* . . . ; (ii) of the invalidating prior art and invalidity positions identified in the reexamination requests; and (iii) that claim 30 was subject to reexamination at the Patent Office.

- Fail[ed] to inform customers such as ProBuild Holdings that the Northern District of California invalidated claim 30 of the '267 patent and that the Patent Office rejected claim 30 of the '267 patent.

(D.I. 28 at ¶¶ 90, 101) The counterclaims allege that GPNE had knowledge of invalidating prior art references and reexamination proceedings before the PTO regarding the patents identified in its letter, and yet GPNE continued to pursue its infringement allegations. (*Id.*) Moreover, GPNE's letter fails to acknowledge that the validity of the disputed claims was being challenged. (D.I. 28, Ex. 3) Fleetmatics' allegations, taken as true, are therefore sufficient to establish bad faith at the pleadings stage. *See Blue Rhino Global Sourcing, Inc. v. Well Traveled Imports, Inc.*, 888 F. Supp. 2d 718, 722, 725 (M.D.N.C. 2012) ("[J]ust because a court has not declared the [patent-in-suit] invalid

does not, as a matter of law, preclude a determination that [the patentee] acted in bad faith in seeking to enforce it.").[4]

GPNE's contention that claim 30 of the '267 patent was only one claim of many that is implicated by the GPRS devices does not alter the outcome. In fact, GPNE's alleged knowledge of the challenges to that claim at the time it sent the patent information letters, despite the fact that GPNE asserted other claims as well, supports Fleetmatics' allegation that GPNE acted in bad faith. Taking Fleetmatics' allegations as true, as is required at this stage of the proceedings, the counterclaims sufficiently set forth allegations of bad faith relating to the validity of the patents to survive GPNE's motion to dismiss.

### 3. Failure to tailor letters

Third, GPNE alleges that it was not required to provide any detail in its patent information letters regarding the specific products or services offered, and the plain language of its letter demonstrates that GPNE had a basis to believe that the recipients utilized GPRS technology, thereby implicating the claims of GPNE's patents. (D.I. 31 at 10-11) Fleetmatics responds that GPNE's bad faith is evident from its failure to identify any allegedly infringing product or service, as well as its failure to provide any analysis comparing the claims to specific products. (D.I. 34 at 11-12)

---

[4] GPNE challenges Fleetmatics' reliance on this decision because it involved claims under the Lanham Act and did not address objective unreasonability. (D.I. 36 at 8) However, the court in *Blue Rhino* addressed the requirements to establish bad faith in a patent case at the pleadings stage and is applicable in that regard. *See Blue Rhino*, 888 F. Supp. 2d at 721-22. GPNE's reliance on *Tyco Healthcare Group LP v. Mutual Pharmaceutical Co., Inc.*, 762 F.3d 1338 (Fed. Cir. 2014) is misplaced because it addresses the presumption of patent validity in the context of summary judgment.

Fleetmatics makes the following allegations in its amended counterclaims in support of its contention that the lack of specificity in the patent information letters constitutes evidence of bad faith:

- Sending customers such as ProBuild Holdings form letters with no effort to tailor the contents of the letters to products or services offered or sold by those customers.

(D.I. 28 at ¶¶ 90, 101) Neither party cites any case authorities in support of its position regarding the use of form letters, specifically. However, Fleetmatics refers to a number of state statutes disclosing the failure to identify "[f]acts relating to the specific areas in which the target's product, service, or technology infringes the patent or is covered by the claims in the patent" as evidence that a party has made an assertion of patent infringement in bad faith. *See, e.g.*, Md. S.B. 585, Sec. 1, § 11-1603(b)(1)(i)(3). Fleetmatics' inclusion of these facts in support of its allegations of bad faith does not warrant dismissal of its amended counterclaims.

### 4. Failure to contact

Finally, GPNE contends that Fleetmatics cites no basis for asserting that a patentee's patent advisory letters are objectively baseless when the patentee does not follow up with further contact. (D.I. 31 at 11) In response, Fleetmatics alleges that GPNE's licensing agent failed to contact Fleetmatics' customers, despite the representations made in the letters. (D.I. 34 at 12-13)

Fleetmatics notes that, despite GPNE's representations in its letters, GPNE has not contacted any of Fleetmatics' customers who received the letters to reach an amicable business arrangement without court involvement, nor has GPNE sued Fleetmatics' customers for infringement. (D.I. 28 at ¶¶ 46-47) Fleetmatics makes the following allegation in its counterclaims regarding GPNE's failure to contact:

11

- Failing to contact customers such as ProBuild Holdings to "pursue a mutually beneficial amicable business arrangement without Court involvement."

(D.I. 28 at ¶¶ 90, 101) Accepting the averments as true, a reasonable person could conclude that GPNE's failure to follow up with the recipients, despite the express representations made in the letter, constitutes evidence of GPNE's bad faith. *See RDP Techs., Inc. v. N-Viro Int'l Corp.*, C.A. No. 00-697-RRM, 2001 WL 1083762, at *6 (D. Del. Sept. 17, 2001) (holding that a genuine issue of material fact existed as to the patentee's bad faith where record evidenced letters sent and a long history of threatening suit to plaintiff's customers and then failing to file suit). Therefore, I recommend that the court deny GPNE's motion to dismiss on the basis of federal preemption.

### B. Sufficiency of State Law Counterclaims

#### 1. Tortious Interference with Contract

GPNE alleges that, even if Fleetmatics' claims survive preemption by federal patent law, its counterclaim for tortious interference with business relations must be dismissed because Fleetmatics cannot plead the necessary elements of the claim. (D.I. 31 at 11) Specifically, GPNE alleges that Fleetmatics has failed to plead any facts establishing objective unreasonability or bad faith, any facts supporting the conclusion that GPNE knew about the alleged contract between Fleetmatics and its customers, any facts demonstrating that GPNE acted intentionally to cause a breach of contract, or any facts showing that GPNE's actions were without justification. (*Id.* at 12-13)

In response, Fleetmatics alleges that it pleads all five elements of a tortious interference claim, and that GPNE's knowledge of Fleetmatics' contracts with its customers may be inferred from GPNE's own letters, knowledge, and conduct. (D.I. 34 at 13-14) Specifically, Fleetmatics

contends that GPNE knew the companies it targeted did not manufacture their own telematics equipment, and that those companies would necessarily have contracts with the supplier of their telematics equipment. (*Id.* at 14) Fleetmatics further notes that its counterclaims expressly assert that "GPNE had no objectively reasonable basis" to send its infringement letters, thereby pleading that GPNE's intentional acts were without justification. (*Id.* at 15)

To state a claim for tortious interference with contractual relations, a party must demonstrate: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (internal quotation marks omitted). In the present matter, Fleetmatics has pleaded the following allegations:

> 85. FleetMatics has contracts with Helena Chemical Company, ProBuild Holdings, ThyssenKrupp Elevator Americas, Electronic Environments Corporation, Installed Building Products LLC, and Johnson Controls.
>
> 86. GPNE had knowledge of FleetMatics' contracts with [FleetMatics' customers].
>
> 87. By sending its letters to FleetMatics' customers, GPNE intentionally (i) interfered with FleetMatics' contractual relationships; and (ii) induced or caused terminations of those contractual relationships.
> ...
> 89. The letters that GPNE sent letters [sic] to FleetMatics' customers, e.g., ProBuild Holdings, were sent in bad faith.
> ...
> 91. FleetMatics has incurred actual harm or damages as a direct result of GPNE's tortious interference with its business relationships, including, for example, loss of revenue following ProBuild Holding's termination of its agreement with FleetMatics.

(D.I. 28 at ¶¶ 85-91) The parties dispute whether GPNE knew of Fleetmatics' contracts with its customers, whether GPNE acted intentionally to cause a breach of the contract, and whether GPNE acted without justification in causing the breach. (D.I. 31 at 12-13) However,

13

Fleetmatics' counterclaims sufficiently allege that GPNE's knowledge can be inferred from its decision to sue Fleetmatics instead of its customers. Moreover, GPNE's letters to Fleetmatics' customers indicate that GPNE was aware that the customers only utilized, and did not manufacture, the GPRS technology, and that the customers would therefore have contracts with a supplier of telematics equipment. (D.I. 28, Ex. 4 at 1) ("It has come to our attention that your company's transportation fleet is utilizing telematics technology with General Packet Radio Service (GPRS) . . ."). The content of GPNE's letters also sufficiently illustrates its intent to disrupt Fleetmatics' contracts with its customers. (*Id.*) ("GPNE has consistently argued in its litigations that such GPRS implementation implicates the company's patents . . . We urge you to consult your own counsel . . .").

Fleetmatics has also adequately pleaded that GPNE acted without justification, expressly stating that "GPNE had no objectively reasonable basis" to send its infringement letters. (D.I. 28 at ¶ 90) For the reasons previously stated at § IV.A, *supra*, Fleetmatics has sufficiently pleaded facts to establish the objective unreasonableness of GPNE's actions at this stage of the proceedings.

### 2. Tortious Interference with Business Opportunity

GPNE next alleges that Fleetmatics failed to sufficiently plead all of the requirements for a claim of tortious interference with prospective business opportunity because there are no allegations that GPNE knew about any alleged business opportunity between Fleetmatics and any of its customers, and Fleetmatics has not pleaded any facts from which the court can infer that the letter was beyond GPNE's privilege to protect its business interests in a lawful manner. (D.I. 31 at 13) According to GPNE, it has the statutory right to license or otherwise enforce its

patents, and Fleetmatics has failed to plead any facts from which the court could infer that GPNE's letter exceeded this privilege. (*Id.* at 14)

In response, Fleetmatics contends that determining whether an actor's conduct is privileged is a factual inquiry, and Fleetmatics has sufficiently alleged that GPNE's conduct was in bad faith, that it falsely represented a motivation to license its patents to Fleetmatics' customers, that its interests were not justified because its infringement allegations were objectively baseless, and that GPNE's conduct towards ProBuild directly caused an interference with Fleetmatics' prospective business relations. (*Id.* at 17)

To state a claim for tortious interference with prospective business relations, a party must allege: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages." *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981). The parties dispute only whether GPNE's letter constituted an intentional interference with a prospective business opportunity. Fleetmatics' allegations that GPNE threatened to sue its customers in the absence of a license agreement, but then failed to negotiate with the customers and sued Fleetmatics instead, are sufficient to establish GPNE's intentional interference with Fleetmatics' customers at this stage of the proceedings. (D.I. 28 at ¶ 101) For the reasons previously stated at § IV.B.1, *supra*, GPNE's knowledge and intent regarding Fleetmatics' customer relationships may be inferred.

### 3. Violation of the Delaware Uniform Deceptive Trade Practices Act

GPNE alleges that Fleetmatics fails to state a claim under the Delaware Uniform Deceptive Trade Practices Act (the "DTPA") because there is no horizontal competition between GPNE and either Fleetmatics or its customers. (D.I. 31 at 15) In response, Fleetmatics alleges

that the DTPA does not require proof of competition between the parties or actual confusion or misunderstanding. (D.I. 34 at 18)

The DTPA prohibits conduct that disparages the goods, services, or business of another by false or misleading representation of fact, or conduct that creates a likelihood of confusion or misunderstanding. *See* 6 *Del. C.* § 2532(a). The DTPA specifically states that, "to prevail in an action under this chapter, a complainant need not prove competition between the parties or actual confusion or misunderstanding." 6 *Del. C.* § 2532(b); *see also Keurig, Inc. v. Strum Foods, Inc.*, 769 F. Supp. 2d 699, 712 (D. Del. 2011). Therefore, GPNE has failed to present the court with a basis for dismissing Fleetmatics' DTPA claim at this stage of the proceedings. I recommend that the court deny GPNE's motion to dismiss Fleetmatics' cause of action brought under the DTPA.

### 4. Common Law Unfair Competition

Finally, GPNE alleges that Fleetmatics' claim for common law unfair competition is duplicative if its claim for tortious interference with prospective business opportunities, and Fleetmatics fails to plead that it is GPNE's competitor. (D.I. 31 at 15-16) In response, Fleetmatics alleges that the similarities between its claim for unfair competition and its claim for tortious interference with prospective business relations have no bearing on the adequacy of its pleading. (D.I. 34 at 19) Fleetmatics notes that this court has permitted parties to maintain separate counterclaims for common law unfair competition and tortious interference with business relations. (*Id.*) In addition, Fleetmatics alleges that the common law tort of unfair competition is not limited to actions between competitors, as recognized by the United States Supreme Court in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1392 (2014). (*Id.*)

16

To state a claim for unfair competition, a plaintiff must allege "a reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm." *Agilent Techs., Inc. v. Kirkland*, C.A. No. 3512-VCS, 2009 WL 119865, at *5 (Del. Ch. Jan. 20, 2009). Fleetmatics has pleaded that it had a reasonable expectancy of entering and continuing its valid business relationships with its customers, that GPNE interfered with those business relationships by wrongfully sending letters to Fleetmatics' customers, and that GPNE's actions defeated Fleetmatics' expectancy and caused harm by preventing Fleetmatics from earning revenue. (D.I. 28 at ¶¶ 91-92, 102-103, 112-114) These allegations, taken as true, are sufficient to establish a cause of action for common law unfair competition at the pleadings stage. GPNE has not cited any authority demonstrating that a party must also plead actual competition to set forth a sufficient claim for common law unfair competition. Therefore, I recommend that the court deny GPNE's motion to dismiss Fleetmatics' common law claim for unfair competition.

## V. CONCLUSION

For the reasons discussed above, I recommend that the court deny plaintiff's motion to dismiss. (D.I. 30)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order In Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available at http://www.ded.uscourts.gov/court-info/local-rules-and-orders/general-orders.

Dated: February 20, 2015

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE